IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In the Matter of:<br><br>JD PETERSON and DAWN E. PETERSON,<br><br>Debtor.<br><br>CURT BROWN and STEPHANIE BROWN,<br><br>Plaintiffs,<br><br>vs.<br><br>JD PETERSON and DAWN E. PETERSON,<br><br>Defendants. | CASE NO. BK20-40028-TLS<br><br>CHAPTER 7<br><br>ADV20-04008-TLS |

**ORDER**

Trial was held in Lincoln, Nebraska, on July 8, 2021, on the plaintiffs' adversary complaint. Sheila Bentzen and Adam Kost appeared for the plaintiffs. Zachary W. Lutz-Priefert and Eric Sutton appeared for the defendants. Post-trial written arguments were submitted, and the matter is now ready for decision. This Order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I) and (J).

The plaintiffs are seeking to determine dischargeability of a debt pursuant to 11 U.S.C. § 523 and are also objecting to debtors' discharge pursuant to 11 U.S.C. § 727 of the Bankruptcy Code. For the reasons discussed below, the Court finds in favor of the plaintiffs and against the defendants, and holds that discharge should be denied under 11 U.S.C. § 727.

*BACKGROUND FACTS*

In their pretrial statement, the parties agreed that the following facts are uncontroverted:

1. Plaintiffs are residents of Big Springs, Nebraska.

2. Defendants are residents of Ogallala, Nebraska.

3. At all relevant times, the defendants were the only shareholders, directors, and officers of J & D Peterson Construction Co. (the "Company").

4. On or about March 5, 2017, the defendants and the Company entered into a construction contract with the plaintiffs to build a personal residence for the plaintiffs.

5. Plaintiffs provided the defendants and Company with construction blueprints prepared by Nelson Design Group.

6. During the course of construction, the plaintiffs notified defendant JD Peterson that the architect's plans were not being followed with regard to the size of the support footings and columns and other matters.

7. The parties agree that some money was paid to the defendants by the plaintiffs; however, they disagree on the exact sums which were paid and what payments were made for.

8. The parties agree that the defendants' company did not finish its scope of the work on the property; however, they disagree as to why the scope of work was not completed.

9. On June 7, 2018, the plaintiffs filed a lawsuit against the defendants and the Company in the District Court of Deuel County, Nebraska, in Case No. CI 18-10 ("Construction Lawsuit"). In the lawsuit, the plaintiffs asserted various claims against the defendants arising out of the construction of the plaintiffs' residence, including a claim for fraudulent misrepresentation.

10. On June 7, 2019, the plaintiffs filed a Motion for Summary Judgment in the Construction Lawsuit.

11. On June 28, 2019, the District Court of Deuel County entered an Order granting the plaintiffs' Motion for Summary Judgment in the Construction Lawsuit and entering judgment against the defendants and the Company in the principal amount of $198,683.50 with interest accruing thereafter at the judgment interest rate.

12. On August 15, 2019, the defendants filed a Motion to Vacate or Amend Judgment in the Construction Lawsuit.

13. On September 24, 2019, the District Court of Deuel County entered an Order denying the Motion to Vacate or Amend Judgment in the Construction Lawsuit.

14. On January 7, 2020, defendants filed a petition under Chapter 7 of the United States Bankruptcy Code.

15. On January 30, 2020, an initial meeting of creditors was held.

16. On February 28, 2020, the plaintiffs filed a proof of claim as it related to the judgment entered in the Construction Lawsuit.

17. On February 28, 2020, the plaintiffs' counsel sent a letter to Chapter 7 Trustee Phil Kelly alleging that the defendants' schedules failed to disclose many assets and transfers of property and requesting the trustee to investigate these matters.

18. On March 19, 2020, following the concerns raised by the plaintiffs, a second meeting of creditors was held.

19. On March 27, 2020, the defendants filed amended property schedules, an amended statement of financial affairs ("SOFA"), and an amended list of creditors.

20. On March 30, 2020, the plaintiffs timely initiated this adversary proceeding objecting to the discharge of the defendants' debt and seeking a determination as to the dischargeability of certain debt.

21. On April 23, 2020, the defendants filed a second amended SOFA.

In addition to those uncontroverted facts set forth in the pretrial statement, the following facts were established at trial:

22. When the defendants filed their initial schedules and SOFA, they inaccurately answered "No" to the following questions:

    • 4. Did you have any income from employment or from operating a business during this year or the two previous calendar years?

    • 16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?

    • 18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?

    • 23. Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.

    • 27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business? (subparts omitted)

    • 28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.

23. Defendants did not amend their schedules and SOFA until after the Chapter 7 Trustee held a supplemental meeting of creditors. A month later, and after the plaintiffs filed

this adversary proceeding, the defendants filed a second amended set of schedules and SOFA to further correct inaccuracies.

24. As of the date of trial, the defendants still had not further amended their schedules and SOFA to reflect additional assets that the record reflects they owned, previously owned, or possessed as of filing, including two bank accounts (ending in 9094 and 3505), a 2012 Mustang GT, a parcel of real estate quitclaimed by Mr. Peterson's mother, a horse, firearms, a camper, and several ATVs.

## *DISCUSSION*

This adversary proceeding involves both a cause of action to determine the dischargeability of a specific debt under section 523 as well as causes of action to deny the defendants a discharge under section 727. If the plaintiffs are successful in any of their § 727 causes of action, it will not be necessary to address the § 523 action. Therefore, the § 727 causes of action will be addressed first.

The plaintiffs seek an order denying the defendants a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(4)(A), and 727(a)(5) on the grounds that the defendants transferred or concealed property with an intent to defraud creditors, that the defendants knowingly and fraudulently submitted a false oath on their bankruptcy schedules and at the meeting of creditors, and that the defendants have failed to explain satisfactorily any loss of assets or deficiency of assets to meet the defendants' liabilities.

The plaintiffs assert that the defendants' lack of honesty and failure to fully disclose their assets should deprive them of a discharge. Denial of discharge is "a serious matter not to be taken lightly by a court." *McDonough v. Erdman (In re Erdman)*, 96 B.R. 978, 984 (Bankr. D.N.D. 1988). It "is akin to financial capital punishment" and "is reserved for the most egregious misconduct by a debtor." *United States Trustee v. Beard (In re Beard)*, 595 B.R. 274, 289 (Bankr. E.D. Ark. 2018) (quoting *Manning v. Watkins (In re Watkins)*, 474 B.R. 625, 630 (Bankr. N.D. Ind. 2012)). Such misconduct is dealt with harshly because a discharge in bankruptcy and the associated fresh start are privileges, not rights. *Bauer v. Iannacone (In re Bauer)*, 298 B.R. 353, 357 (B.A.P. 8th Cir. 2003) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). "The opportunity for a completely unencumbered new beginning is limited to the honest but unfortunate debtor. The cost to the debtor for an unencumbered fresh start is minimal, but it includes honestly and accurately disclosing his or her financial affairs and cooperating with the trustee." *Doeling v. Reimer (In re Reimer)*, No. AP 19-7072, 2021 WL 1621295, at *9 (Bankr. D.N.D. Apr. 26, 2021) (internal citations omitted).

The provisions of § 727 are strictly construed in the debtor's favor, while remaining cognizant that § 727 exists to prevent a debtor's abuse of the Bankruptcy Code. *Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 589-90 (Bankr. D. Minn. 1987). When a party objecting to a debtor's discharge "establishes a prima facie case, the burden then shifts to the debtor defendant to offer credible evidence to satisfactorily explain his conduct." *Beard*, 595 B.R. at 290 (quoting *Robbins v. Haynes (In re Haynes)*, 549 B.R. 677, 685 (Bankr. D.S.C. 2016)). *See also* Fed. R. Bankr. P. 4005; *Kaler v. Charles (In re Charles)*, 474 B.R. 680, 683-84 (B.A.P. 8th Cir. 2012).

Because § 727(a)(2) and § 727(a)(4)(A) are dispositive in this case, the findings of fact and conclusions of law will focus on those sections; the remaining causes of action need not be addressed here.

Section 727(a)(2) of the Bankruptcy Code, which denies a discharge to debtors who transfer or conceal property with an intent to defraud creditors, states, in relevant part, that:

> (a) The court shall grant the debtor a discharge, unless —
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>> (B) property of the estate, after the date of the filing of the petition[.]

Section 727(a)(4)(A) denies discharge to debtors who knowingly and fraudulently submit a false oath or account. It states in relevant part:

> (a) The court shall grant the debtor a discharge, unless–
> . . .
> (4) the debtor knowingly and fraudulently, in or in connection with the case–
>> (A) made a false oath or account[.]

These sections are "fundamental to the concept that a debtor's chapter 7 discharge is granted upon the condition that the debtor has disclosed all of [his] assets and made them available for distribution." *Beard*, 595 B.R. at 290.

To prevail on the § 727(a)(2) cause of action, the plaintiff must show by a preponderance of the evidence that (1) the debtor's actions took place within twelve months prior to the filing of the petition for bankruptcy relief, or after the petition date; (2) the debtor took the actions with the intent to hinder, delay or defraud a creditor or an officer of the estate; (3) the debtor himself took the actions; and (4) the debtor's actions consisted of transferring, removing, destroying or concealing property. *Georgen-Running v. Grimlie (In re Grimlie)*, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010); *Korte v. United States (In re Korte)*, 262 B.R. 464, 472 (B.A.P. 8th Cir. 2001).

Here, elements (1), (3), and (4) are not in dispute. The defendants base their defense on a lack of intent to hinder or defraud a creditor. In other words, they argue that their failure to schedule certain assets and to properly answer SOFA questions were simply innocent mistakes.

The debtor's actual, subjective intent to hinder, delay or defraud is a requisite element of denial of a discharge. *Helena Chem. Co. v. Richmond (In re Richmond)*, 429 B.R. 263, 304 (Bankr. E.D. Ark. 2010). Constructive intent will not suffice. *Jacoway v. Mathis (In re Mathis)*, 258 B.R.

726, 733 (Bankr. W.D. Ark. 2000) (citing *Lovell v. Mixon*, 719 F.2d 1373, 1377 (8th Cir. 1983)). Because direct evidence of a debtor's intent may be difficult to come by, such intent may be inferred from facts and circumstances of the debtor's conduct. *Korte*, 262 B.R. at 472-73. The overriding principle applicable in virtually all cases under § 727(a) is that "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor." *U.S. Trustee v. Govani (In re Govani)*, 509 B.R. 675, 683 (Bankr. N.D. Iowa 2014) (quoting *Phillips v. Epic Aviation (In re Phillips)*, 476 Fed. Appx. 813, 816 (11th Cir. 2012)).

Likewise, § 727(a)(4)(A) necessitates an assessment of the debtors' intent. Section 727(a)(4)(A) of the Bankruptcy Code authorizes the court to withhold a discharge of all of a debtor's debts when the debtor knowingly and fraudulently makes a false oath or account in the bankruptcy case. The purpose of § 727(a)(4)(A) is to "promote[] truth-telling in the statements and schedules so that creditors and trustees will not have to resort to independent investigation and fact-finding." *Wetzel v. Eichler (In re Eichler)*, 599 B.R. 31, 46 (Bankr. E.D. Ark. 2019) (quoting *Daniel v. Boyd (In re Boyd)*, 347 B.R. 349, 355 (Bankr. W.D. Ark. 2006)). "Full disclosure is required, not only to ensure that creditors receive everything they are entitled to receive under the Bankruptcy Code, but also to give the bankruptcy system credibility and make it function properly and smoothly[.]" *Home Serv. Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 454 (B.A.P. 8th Cir. 2015). The Eighth Circuit Bankruptcy Appellate Panel described the analysis under § 727(a)(4)(A) as follows:

> Section 727(a)(4)(A) "provides a harsh penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest in his case." *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000). . . . For such a false oath or account to bar a discharge, the false statement must be both material and made with intent. . . . The question of a debtor's "knowledge and intent under § 727(a)(4) is a matter of fact." *In re Sears*, 246 B.R. at 347 (citing *In re Olson*, 916 F.2d at 484). Intent "can be established by circumstantial evidence," and "statements made with reckless indifference to the truth are regarded as intentionally false." *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993) (citing *In re Sanders*, 128 B.R. 963, 964 (Bankr. W.D. La. 1991)).
>
> As § 727(a)(4)(A) makes clear, "[t]he Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind." *Fokkena v. Tripp (In re Tripp)*, 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998) (citing *In re Craig*, 195 B.R. 443, 451 (Bankr. D.N.D. 1996)). The debtor's "petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *In re Sears*, 246 B.R. at 347 (citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992)). *See generally National Am. Ins. Co. v. Guajardo (In re Guajardo)*, 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997) ("[T]he Bankruptcy Code requires disclosure of all interests in property, the location of all assets, prior and ongoing business and personal transactions, and, foremost, honesty. The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy

> system as well as the judicial system as a whole."). Statements made in schedules are signed under penalties of perjury and have "the force and effect of oaths," and testimony elicited at the first meeting of creditors is given under oath. *In re Smith*, 161 B.R. at 992 (citing *In re Sanders*, 128 B.R. 963 (Bankr. W.D. La. 1991)).

*Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001).

Here, materiality is not subject to dispute. There is no doubt that the inaccuracies and omissions bear a significant relationship to the business of the defendants and the assets of the estate. Thus, whether the cause of action is under § 727(a)(2) or (4), the only issue in dispute pertains to the intent of the defendants. As indicated, intent can be established by circumstantial evidence, and statements made with reckless disregard for the truth are regarded as intentionally false. The cumulative effect of falsehoods evidencing a "pattern of reckless and cavalier disregard for the truth" may support a finding of fraudulent intent. *Beard*, 595 B.R. at 295.

Plaintiffs' evidence at trial centered on the concealment of property by the defendants and the making of false oaths on the bankruptcy schedules. Plaintiffs assert -- and defendants do not dispute -- that the initial schedules and SOFA were inaccurate in many respects as set forth above. From the Court's perspective, one of the most glaring omissions was the failure to list at any time the two bank accounts ending in 9094 and 3505. Mr. Peterson gave no explanation for this omission and admitted that he only "looked over" some of the bankruptcy paperwork. Mrs. Peterson initially asserted that the account 9094 belonged to her minor son and 3505 belonged to her other son even though her name was also on the accounts. Further, she admitted at trial that she was the one who initiated all of the transfers to and from account 9094 and most if not all of the online transfers related to account 3505. Those transfers were made frequently, and many were to and from the business accounts of the defendants. Mrs. Peterson was unable to effectively explain why it was necessary for her business to use accounts purportedly belonging to her children, nor did either of her children provide any testimony. Those two bank accounts were clearly under the control of the defendants and should have been properly disclosed in the schedules and SOFA. The circumstantial evidence establishes that Mrs. Peterson intentionally failed to disclose the two bank accounts and that Mr. Peterson showed reckless disregard for the truth with respect to the disclosures.

> [T]he Bankruptcy Code requires more than a "glance over" in reporting assets and transactions. Indeed, a mere "glance over" constitutes a cavalier and reckless disregard for truth which is inconsistent with the relief to be afforded the honest debtor. It is not for the debtors to determine what is important enough to be reported. All assets and transactions must be reported, even if the assets are worthless or unavailable to creditors

*Mosley v. Sims (In re Sims)*, 148 B.R. 553, 557 (Bankr. E.D. Ark. 1992) (citing *Barnett Bank of Tampa v. Muscatell,* 113 B.R. 72, 74 (Bankr.M.D.Fla.1990) and *Palatine National Bank of Palatine v. Olson,* 916 F.2d 481, 484 (8th Cir.1990)).

Another glaring omission is the failure to disclose at any time the ownership of a parcel of real estate (adjoining the real estate that was disclosed) transferred in 2013 to "J.D. Peterson,

Trustee of the J.D. Peterson Trust." In fact, neither the transfer of the real estate nor the existence of the trust is disclosed in the defendants' bankruptcy filings. The defendants testified that they felt they really didn't own that parcel because it is subject to a life estate in favor of Mr. Peterson's mother. That testimony was both factually inaccurate and disingenuous. Questions of whether certain assets titled in a debtor's name are, or are not, property of the estate are not questions a debtor should decide. "Rather, those questions are plainly and fundamentally issues to be determined by a trustee or the court." *Cecil*, 542 B.R. at 454.

> The Debtor is not to decide for himself the nature of his interest in property, the value of that property or the amount of his equity therein. Also, he is not to decide for himself which questions on the Statement of Affairs should be answered fully, completely and truthfully. The Debtor cannot omit information required of him simply because he believes or decides the property omitted has no value or the information is not necessary. This is for the creditors and the Court to decide.

*Morrel, West & Saffa, Inc. v. Riley (In re Riley)*, 128 B.R. 567, 569 (Bankr. N.D. Okla. 1991).

In their closing argument brief, the defendants argue that the JD Peterson Trust does not exist and the deed transferring real estate to the trust was invalid -- therefore, neither needed to be disclosed. That argument is both convoluted and seems technically inaccurate. However, this Court need not decide for this case whether JD Peterson's mother could legally quitclaim title to real estate to the JD Peterson Trust earlier than indicated in her revocable trust. The only thing that matters is she *did* do so and the defendants knew that the adjoining property had been transferred by quitclaim deed to the JD Peterson Trust. It is not for the debtor to decide the extent and nature of his interest. *Id.* The interest should have been disclosed.

Also concerning to the Court is the fact that just three months before bankruptcy filing, the defendants transferred title to a 2017 camper valued at more than $42,000.00 to Mrs. Peterson's mother, Mrs. Smithberg. Defendants did not initially disclose the transfer but did so in their amendment after the rescheduled § 341 meeting. At trial, the defendants asserted that Mrs. Smithberg had loaned the money to pay for the camper, and that they were unable to pay her back. Therefore, they transferred it to her in satisfaction of the debt. However, there was no testimony presented from Mrs. Smithberg regarding the camper, nor was there any evidence presented to describe the financing arrangement with Mrs. Smithberg or even to show that that defendants had made payments on such a debt at any time. Further, the camper was kept on the defendants' property both before and after the transfer of title. Ultimately, the trustee claimed the camper as an asset and sold it to Mrs. Smithberg without credit for any purported loan balance. Nobody contested the trustee's claim to the asset on behalf of the bankruptcy estate.[1]

The court may find that a debtor has engaged in concealment under § 727(a)(2) when he transfers legal title of property while retaining an undisclosed possessory interest in the property that allowed him to use it for his own purposes, as the defendants did here. *Sears v. Sears*, 863

---

[1] As the plaintiffs correctly point out, this transfer raises a red flag concerning the issue of a preferential transfer under § 547(b) or a fraudulent transfer under § 548(a), regardless of its implications on the debtors' discharge.

F.3d 980, 985 (8th Cir. 2017). Nebraska law, moreover, recognizes possessory interests as property, and the defendants here concealed this property interest. *Id.* (citing Neb. Rev. Stat. §§ 76-101 and 76-103). In addition, fraudulent intent is presumed under § 727(a)(2) where the debtor has gratuitously conveyed valuable property. *Abbott Bank – Hemingford v. Armstrong (In re Armstrong)*, 931 F.2d 1233, 1239 (8th Cir. 1991). Once a gratuitous transfer is shown, the burden then shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors. *Id.*

While courts are often understanding of a single omission or error resulting from an innocent mistake, multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth which is the functional equivalent of intent to deceive. *Kaler v. Geller (In re Geller)*, 314 B.R. 800, 807 (Bankr. D.N.D. 2004) (citing *Jordan v. Bren (In re Bren)*, 303 B.R. 610, 613 (B.A.P. 8th Cir. 2004), *overruled on other grounds* by 122 F. App'x 285 (8th Cir. 2005); *Smith*, 161 B.R. at 992. "[T]he existence of multiple falsehoods, taken together with a failure on the part of the debtor to correct all known inconsistencies, omissions, and misstatements upon first amendment, constitutes reckless indifference to the truth and, thus, the requisite intent to deceive." *Kaler v. McLaren (In re McLaren)*, 236 B.R. 882, 895 (Bankr. D.N.D. 1999) (citations omitted). The same rationale extends to initial filings in which a debtor makes statements that exceed honest mistakes and are inconsistent and incompatible with the debtor's own knowledge and information. *Id.* at 894-95 (noting that the "price" for relief under the Bankruptcy Code is "the debtor's utmost honesty and candor in all dealings with the Court").

The plaintiffs have uncovered (and set forth in their filings) many more examples of failure to disclose and/or concealment by the defendants. This included a transfer of more than $12,000.00 from the defendants' business bank account to Mrs. Smithberg's bank account a few weeks prior to bankruptcy filing without any explanation by the defendants. Once the plaintiffs established the numerous omissions from the schedules, the burden shifted to the debtors to offer credible evidence to satisfactorily explain their conduct. *In re Loganbill*, 554 B.R. 871, 877 (Bankr. W.D. Mo. 2016) (citing *Anderson v. Hooper (In re Hooper)*, 274 B.R. 210, 214-15 (Bankr. D.S.C. 2001).

In their closing brief, the defendants argue that the blame should lie with their bankruptcy attorney who they assert did not include all relevant information in the schedules or perhaps failed to ask the right questions. Reliance of the advice of counsel is not unassailable, however, and does not excuse whatever conduct a debtor may undertake:

> Where a debtor's actions were motivated by attorney advice, that reliance, if reasonable, may excuse acts which otherwise bear indicia of fraud. However, the attorney must have been made fully aware of all relevant facts—that is, the debtor must have made a full and fair disclosure to him. Reliance on attorney advice absolves one of intent only where that reliance was reasonable and where the advice given was informed advice.

*Erdman*, 96 B.R. at 985.

In the present case, however, the plaintiffs were able to show that much of the omitted information and assets were not disclosed to the bankruptcy attorney on the client intake form that is in evidence. Defendants also failed to provide any testimony or other evidence from their

bankruptcy attorney or employees in his office. Again, the defendants have failed to meet their burden.

It is apparent to the Court that the defendants simply did not make a sufficient effort to ensure the accuracy and completeness of their schedules and SOFA -- whether initially or when they made two separate amendments -- nor have they satisfactorily explained that failure. For purposes of § 727(a)(2) and § 727(a)(4), intent "can be established by circumstantial evidence," and "statements made with reckless indifference to the truth are regarded as intentionally false." *Smith*, 161 B.R. at 992 (citing *In re Sanders*, 128 B.R. 963, 964 (Bankr. W.D. La. 1991)). Here, the sheer volume and materiality of the misstatements and omissions demonstrates, at a minimum, reckless indifference to the truth. In fact, the schedules and SOFA appear to be intentionally false, even after two prior amendments.

Defendants' schedules and SOFA were and are not accurate or reliable. This is not a situation where there were only one or two innocent omissions; instead, they were numerous. Many were corrected, but only after a creditor went through the effort to dig them out and the trustee re-convened the meeting of creditors. A debtor's "petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *In re Sears*, 246 B.R. at 347 (citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992)). Some omissions have not been corrected at all.

Accordingly, the Court finds that the elements for denial of discharge under 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4)(A) have been met, and it is not necessary to address the causes of action under § 727(a)(5) or § 523.

IT IS ORDERED: For the foregoing reasons, the plaintiffs' complaint is granted and the defendants are denied a discharge under 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4)(A). Separate judgment to be entered.

DATED this 30th day of August, 2021.

BY THE COURT:

/s/Thomas L. Saladino
Thomas L. Saladino
Chief Bankruptcy Judge

Copies provided by the court to:
*Sheila Bentzen
Adam Kost akost@rembolltlawfirm.com
Zachary W. Lutz-Priefert
Eric Sutton
United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.